IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Randall J. May,<br><br>               Plaintiff,<br><br>v.<br><br>Delta Air Lines,<br><br>               Defendant. | Case No.: 1:21-cv-00710 (ADM/ECW)<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

## **INTRODUCTION**

Plaintiff Randall J. May ("Plaintiff") brought this employment discrimination action under the Americans with Disabilities Act ("ADA") against his former employer Defendant Delta Air Lines, Inc. ("Defendant" or "Delta").

The Parties are presently engaged in written discovery and discussions related to depositions, including topics such as the form of the deposition, deponents, dates, times, and location. During these discussions, Plaintiff has insisted upon deposing Delta's Chief Executive Officer ("CEO"), Edward "Ed" Bastian ("Mr. Bastian"), who leads a global company with over 90,000 employees. After Delta informed Plaintiff that it objected to Mr. Bastian's deposition, Plaintiff filed the instant motion to compel the same.[1]

As explained below, Delta opposes the motion to compel because (1) Plaintiff has no evidence that Mr. Bastian has personal knowledge of relevant facts or unique knowledge relevant to this action; (2) his deposition is not proportional to the needs of the case, and

---

[1] Plaintiff also filed the motion *before* utilizing the Court's required process to address discovery disputes prior to engaging in motion practice as per the Court's Pretrial Scheduling Order dated July 15, 2021, Dkt. #12.

(3) Plaintiff's request to depose Mr. Bastian is appropriately prohibited by law governing depositions of executives at the apex of corporations, particularly because Plaintiff has not attempted to use less-intrusive means to obtain the information he believes he needs. Thus, Delta respectfully requests that Plaintiff's motion be denied.

## FACTUAL BACKGROUND

Delta hired Plaintiff around April 11, 2016, as a Seasonal Ready Reserve Agent at Delta's operations located at the Minneapolis-St. Paul International Airport. (Compl., Dkt. #1-2, p.2). Around June 18, 2018, Delta received an accommodation request form completed by Plaintiff's physician, which indicated that Plaintiff would be restricted to working three days per week, for an expected duration of one year. (Compl., Dkt.. #1-3, p.3; Defendant's Answer ¶ 10.1, Dkt. #6 ("Answer")). Pursuant to its robust Accommodation Program, Delta commenced an interactive process with Plaintiff in order to better understand his limitations and determine what, if any, reasonable accommodations could be made to allow Plaintiff to perform the essential functions of his position. (Answer ¶ 10.1).

As part of this process, on July 2, 2018, a meeting was scheduled with Plaintiff and Minneapolis-St. Paul airport site leaders, including, among others, General Manager Kelly Patton, Human Resources Manager Leah Gajria, and Equal Opportunity Manager Annelyse Sanders to discuss Plaintiff's restrictions and potential accommodations. (Compl., Dkt. #1-3, pp.20-22; Answer ¶ 10.1). However, based upon operational needs, no 3-day lines (*i.e.*, jobs) exist for Seasonal Ready Reserve positions, and no reasonable

accommodation was identified that would allow Plaintiff to perform all the essential functions of his position. (Compl., Dkt. #1-3, pp.20-22).

Alternatively, Plaintiff was offered what Delta's Accommodation Program refers to as Alternative Position Assistance, which assists employees in finding alternative positions within the company for which they are qualified and can perform the essential functions within their work restrictions (with or without reasonable accommodation). (Compl., Dkt. #1-3, pp.20-22). Until such a position was identified, Plaintiff was offered a leave of absence as a reasonable accommodation and provided information to begin that process through Delta's third-party leave and absence management vendor. (*Id.*; Compl., Dkt. #1-3, p.8).

In connection with the July 2nd meeting at the airport, Ms. Patton had asked Plaintiff how he was doing, to which Plaintiff replied by making a statement along the lines of "I haven't blown anyone up yet." (Answer ¶ 10.2). Concerned with this remark, Ms. Patton; Ms. Gajria; Anthony Spencer, former Corporate Security Contractor; and other employees of Delta met with Plaintiff that same day to address the comment and assess any potential security risks, and gathered Plaintiff's site-access badge pending further investigation. (Answer ¶¶ 10.2, 10.3). Other than addressing the comment via this meeting, however, no formal disciplinary action was taken against Plaintiff based on the comment.

Following the July 2nd meeting, on July 10, 2018, a meeting was held, via telephone, between Plaintiff and Ms. Patton, Ms. Gajria, and Director of Airport Operations Lori Dehn ("Ms. Dehn") to further discuss Plaintiff's restrictions and possible accommodations. (Compl., Dkt. #1-3, p.27; Answer ¶ 10.1). Following the meeting, an

3

open non-seasonal Ready Reserve position was identified by Ms. Dehn that Plaintiff could hold based on his seniority and allow him to work within his restrictions. (*Id.*; Compl., Dkt. #1-3, p.20). Plaintiff was awarded the position and thus returned to work from the approved leave of absence on July 20, 2018. (Compl., Dkt. #1-2, p.2; Answer ¶12).

Plaintiff filed a Charge of discrimination with the EEOC relating to his request for accommodation on October 4, 2018. (Compl., Dkt. #1-2, p.2; Answer ¶ 6). On October 25, 2018, Plaintiff sent an email to Mr. Bastian and other senior executives expressing frustrations related to his experience with Delta's reasonable accommodation program, which was then delegated to and addressed by other personnel. (Plt. Mot. Compel, Dkt. #20, pp.4-9, bates-labeled DELTA000076-81). Mr. Bastian did not respond directly to Plaintiff, but the email was eventually forwarded to Melissa Seppings, Delta's Director of Equal Opportunity and Compliance. (*Id.*). On December 3, 2018, Plaintiff submitted his voluntary resignation. (Decl. of Brian Moen, dated August 25, 2021 ("Moen Decl."), at ¶ 5).

Beyond simply receiving and forwarding Plaintiff's email dated October 25, 2018— which Plaintiff drafted and sent, not Mr. Bastian—Plaintiff has not (and cannot) identify any way in which Mr. Bastian is likely to have any discoverable information pursuant to Fed. R. Civ. P. 26. Instead, Plaintiff relies upon his broad assertions that "I thought sending Bastian the supposed 'rules' he had helped write would be a call to action to be a man of his word," and that Mr. Bastian "needs to be held accountable through Deposition for guiding a company in violation of the Federal Law[.]" (Plt. Mot. Compel., Dkt. #19, pp. 2, 3). But Plaintiff's speculation does not mean a deposition of Mr. Bastian would yield

4

relevant evidence. Additionally, although Plaintiff served written discovery requests on Delta via mail on July 26, 2021 (Dkt Nos. 16-1, 17-1), the responses to those requests are not yet due. Rather than await those responses, however, Plaintiff has instead forced the parties to devote significant time and resources to address the instant motion. Thus, Plaintiff's motion to compel should be denied.

## **ARGUMENT**

Edward Bastian is the CEO of Delta Air Lines, Inc. Plaintiff's Complaint does not mention Mr. Bastian. (Compl.). Plaintiff's Rule 26(a)(1) Initial Disclosures do not identify Mr. Bastian as an individual likely to have discoverable information. (Moen Decl. at ¶ 3). Plaintiff also seeks to depose five other Delta employees with firsthand knowledge of the matters giving rise to the instant litigation, but Plaintiff wants to depose Mr. Bastian first (and has refused to depose any other witnesses until Mr. Bastian is deposed). (Plt. Mot. Compel, Dkt. #20, pp.1-3; Moen Decl. at ¶ 4).

Plaintiff's motion to compel fails because (1) Plaintiff has not shown that Mr. Bastian has personal knowledge of relevant facts or unique knowledge relevant to this action; (2) his deposition is not proportional to the needs of the case; and (3) Plaintiff's demand to depose Mr. Bastian is barred by applicable law governing depositions of executives at the apex of corporations. As such, the Court should deny Plaintiff's motion.

### A. **Legal Standard**

Rule 26(b) of the Federal Rules of Civil Procedure defines the limits for discovery in civil litigation. Although the scope of discovery is generally broad and allows inquiry into any non-privileged and relevant matter, discovery must be "proportional to the needs

of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Moreover, Courts have broad discretion to regulate discovery and to issue suitable protective orders. *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 10223626, at *2 (D. Minn. Nov. 5, 2020).

Because a deposition of Mr. Bastian is neither relevant nor proportional to the needs of the case, the court should deny the motion to compel and vacate the deposition notice.

**B.     A Deposition of Edward Bastian Would Not Yield Relevant Evidence.**

The motion to compel should be denied because a deposition of Mr. Bastian would not yield relevant evidence. Specifically, Plaintiff has not demonstrated that Mr. Bastian has any personal knowledge of Plaintiff's claims. Plaintiff also has not shown and does not allege that Mr. Bastian had any involvement with Plaintiff's request for accommodation. Indeed, Plaintiff has not presented any exchanges of communications with Mr. Bastian outside of Plaintiff's one-sided email and Plaintiff asserts that there are none— acknowledging that "the managerial decision [Mr. Bastian] made was to simply forward my email," and, in Plaintiff's words, that Mr. Bastian "dismiss[ed] the email I wrote directly to him." (Plt. Mot. Compel, Dkt. #19, pp.2, 3). Ultimately, that email was delegated to and addressed by other, more appropriate personnel. Mr. Bastian has no connection to any issue in this litigation, other than being the recipient of a self-serving email sent to him by the Plaintiff. (*See* Plt. Mot. Compel, Dkt. #20, pp.4-9, bates-labeled

6

DELTA000076-81). Because Plaintiff has not and cannot show that Mr. Bastian has any knowledge relevant to this case, the motion to compel should be denied.

> C. **A Deposition of Edward Bastian Would Not be Proportional to the Needs of the Case.**

The motion to compel Mr. Bastian's deposition should also be denied because the deposition would not be proportional to the needs of the case. Mr. Bastian is the CEO of a global business with over 90,000 employees. Plaintiff's deposition notice demands that Mr. Bastian travel away from Delta's principal place of business in Atlanta, Georgia to Brooklyn Park for more than seven hours on September 15, 2021. (Moen Decl. at ¶ 4). Mr. Bastian would also be forced to prepare for the deposition, incurring additional time and expense. Given the burden and expense and Mr. Bastian's lack of knowledge or involvement in any of the events at issue, Mr. Bastian's deposition is not proportional to the needs of the case.

> D. **Depositions of Senior Executives Such as Edward Bastian Are Not Permitted When the Witness Lacks Personal or Unique Knowledge or Where the Information Can be Obtained Through Less Intrusive Means.**

Finally, Plaintiff's motion should be denied because Mr. Bastian is a senior executive at Delta without unique knowledge regarding Plaintiff's claims, and the information Plaintiff seeks can be obtained through less intrusive means. Indeed, Plaintiff does not point to any evidence that shows Mr. Bastian has any personal or unique knowledge concerning the facts underlying Plaintiff's claims.

In the case of high-level executives, sometimes known as "apex" witnesses, courts "frequently restrict efforts to depose senior executives where the party seeking the

deposition can obtain the same information through less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." *Cardenas v. Prudential Ins. Co. of Am.*, No. CIV.99-1421(JRT/FLN), 2003 WL 21293757, at *1 (D. Minn. May 16, 2003) (citations omitted); *Hanson v. Loparex Inc.*, No. 09-CV-1070 (MJD/SRN), 2010 WL 11432148, at *2 (D. Minn. Sept. 27, 2010) ("[C]ourts routinely restrict efforts to depose senior executives under certain circumstances."); *see also Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*, No. 12-CV-2706 MJD/LIB, 2014 WL 5685463, at *3 (D. Minn. Sept. 24, 2014), *aff'd*, No. CIV. 12-2706 MJD/LIB, 2014 WL 5685707 (D. Minn. Nov. 4, 2014) (In determining whether to permit an apex deposition courts consider "(1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods," and that "[g]enerally speaking, courts are wary of allowing parties to depose high-level executives where the deposing party fails to establish that the executive has some unique knowledge relevant and critical to the case at hand.") (citations omitted); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 CIV. 5316 RMB MHD, 2006 WL 3476735, at *12 (S.D.N.Y. Nov. 30, 2006) (because of the "concern that litigants may be tempted to use such depositions—and the disruption that they may occasion—as a form of leverage or harassment by forcing senior officials to spend time in preparing for and attending a deposition when they have little or no pertinent testimony to offer . . . courts have agreed that if a party seeks to depose a very senior official of an adversary entity, the adversary may obtain an order vacating the deposition notice if it can demonstrate that the proposed

deponent has no personal knowledge of the relevant facts and no unique knowledge of those facts.").

Additionally, courts have recognized that the deposition of a high-level executive "creates a tremendous potential for abuse or harassment." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also Schwendimann v. Arkwright Advanced Coating, Inc.*, No. CV 11-820 (ADM/JSM), 2016 WL 6916838, at *5 (D. Minn. Jan. 8, 2016) ("[W]hen the discovery to be obtained is through the deposition of a senior executive, a court must remain mindful that permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation.") (citations omitted). Here, one of Plaintiff's stated reasons to depose Mr. Bastian is because of Plaintiff's belief that Mr. Bastian "needs to be held accountable" for Plaintiff's perceived injustices. (Plt. Mot. Compel, Dkt. #19, p. 3). This purported justification is the precise type of harassing behavior identified by courts as a reason for restricting efforts to depose "apex" witnesses.

In this case, Mr. Bastian has no unique knowledge relevant to Plaintiff's claims. He oversees the entirety of Delta's global operations, not just its operations at the Minneapolis-St. Paul airport. Apart from the mere fact that he was a recipient of an email that Plaintiff sent on October 25, 2018 (to which Mr. Bastian did not respond), there is no evidence that Mr. Bastian was involved in the circumstances giving rise to the instant litigation, or that he has unique information about Plaintiff's allegations. Plaintiff has not and cannot show otherwise. Moreover, it would be inappropriate to allow a party to procure the deposition of an "apex" witness by simply sending a unilateral, self-serving email to

9

that executive who otherwise has no personal involvement in, or knowledge of, the events giving rise to the dispute.

Furthermore, Plaintiff has not availed himself of the opportunity to seek information from other, less burdensome sources, including, but not limited to, via the depositions he has noticed for his former Manager (Kelly Patton), the Human Resources Manager (Leah Gajria), the Equal Opportunity Manager (Annelyse Sanders), the Department Manager at MSP (Steven Grenz), and the former Corporate Security Contractor involved in the investigation into Plaintiff's inappropriate comment (Anthony Spencer). These five individuals have firsthand knowledge of the relevant events, and, to varying degrees, were directly involved in either the decisions relating to Plaintiff's request for accommodation or subsequent investigation into his comment that gave rise to a security concern.[2] *Loparex Inc.*, 2010 WL 11432148 at *8 (denying motion to compel executive when information sought could be "more easily obtained from a lower level employee."); *see also Pullano v. UBS/Paine Webber, Inc.*, No. 03-CV-6313, 2007 WL 9779148, at *2 (W.D.N.Y. Mar. 21, 2007) (denying motion to compel deposition of executive due to fact that plaintiff had already deposed witnesses who were involved in the decision to terminate plaintiff). Plaintiff has not taken any other depositions or even waited for Delta's written discovery responses (which are not yet due). He has thus not even attempted to obtain relevant evidence through less intrusive means.

---

[2] Delta also does not object to Plaintiff deposing Melissa Seppings, the Director of Equal Opportunity and Compliance to whom Plaintiff's October 25, 2018 email was forwarded (although Delta does question whether she will have much non-privileged information to provide given that Plaintiff sent his email *after* he had filed his EEOC charge).

10

Mr. Bastian's lack of involvement in the relevant events and lack of unique knowledge warrants the denial of Plaintiff's motion to compel. *Loparex Inc.*, 2010 WL 11432148 at *5 (denying Plaintiff's motion to compel deposition of CEO because Plaintiff "failed to demonstrate that [the CEO] ha[d] any knowledge, let alone 'unique knowledge[.]'"); *Louis Vuitton Malletier*, 2006 WL 3476735 at *12 (granting a protective order precluding a deposition of a former general manager who did not "participate[] in any of the events at issue in this case" and only possessed generalized knowledge about the business that was not directly relevant to the issues in the case). The burden and business disruption to Delta from permitting Mr. Bastian's deposition far exceeds the value of deposing him given his lack of knowledge of relevant facts, and Plaintiff's ability to obtain relevant information through less intrusive means. This Court should therefore deny Plaintiff's motion to compel and preclude Plaintiff from deposing Mr. Bastian.

## **CONCLUSION**

For the foregoing reasons, Delta respectfully requests that the Court deny Plaintiff's motion to compel and award such other relief as the Court deems just and proper.

Dated: August 25, 2021

*/s/Brian Moen*
Ben D. Kappelman (#0395122)
Brian Moen (#0400183)
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868
kappelman.ben@dorsey.com
moen.brian@dorsey.com

*Attorneys for Defendant Delta Air Lines, Inc.*

# CERTIFICATE OF SERVICE

I, Brian Moen, hereby certify that on this 25th day of August, 2021, I caused the foregoing document to be served upon Plaintiff Randall J. May, via electronic mail and first class mail, postage prepaid, at the below listed address:

    Randall J. May
    11 6th Avenue North
    Apt. 204
    Saint Cloud, MN 56303
    rmayof1@gmail.com

I declare under the penalty of perjury that the foregoing information is true and correct.

    */s/Brian Moen*
    Ben D. Kappelman (#0395122)
    Brian Moen (#0400183)
    **DORSEY & WHITNEY LLP**
    50 South Sixth Street, Suite 1500
    Minneapolis, MN 55402
    Telephone: (612) 340-2600
    Facsimile: (612) 340-2868
    kappelman.ben@dorsey.com
    moen.brian@dorsey.com

    *Attorneys for Defendant Delta Air Lines, Inc.*